IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HIEU BUI** | : |
|         Plaintiff | : |
| | :   CIVIL ACTION NO.: |
| v. | : |
| | : |
| **THE VANGUARD GROUP, INC.** | :   **JURY TRIAL DEMANDED** |
|         Defendant | : |

## COMPLAINT

**I.**     **INTRODUCTION**

    1.     Plaintiff, Hieu Bui (HBui), brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, as amended ("Title VII") and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA") and seeks all appropriate remedies under §9 of the Pennsylvania Human Relations Act, compensatory and punitive damages, declaratory and injunctive relief, interest, costs (including expert witness fees), liquidated damages, negative tax consequence damages and attorney's fees from Defendant, The Vanguard Group, Inc. (VGI).

**II.**     **JURISDICTION AND VENUE**

    2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343 and 29 U.S.C. § 2617.

    3.     The unlawful acts and practices of VGI were committed within or upon the direction of VGI's agents, servants, employees and/or representatives within the Commonwealth of Pennsylvania.

**III.**     **PARTIES**

    4.     Plaintiff, HBui, is an Asian male resident of Pottstown, Pennsylvania.

5.      Defendant, VGI, is one of the world's largest investment management companies with approximately $2 trillion in investment assets as of December 31, 2012, part of which includes public funds. Unlike ordinary mutual fund companies, VGI is owned by its funds, which in turn are owned by the funds' shareholders.

6.      Many of VGI's fund shareholders and clients are public and/or publicly funded entities that are prohibited from directly or indirectly being party to racially discriminatory and retaliatory practices. The following is a list of some of VGI's fund shareholders - The Philadelphia Foundation, The Pew Charitable Trusts, Major League Baseball (MLB), The Philadelphia Phillies, The Philadelphia Eagles, Philadelphia Gas Works, Philadelphia's Board of Pensions and Retirement, Chevron, FedEx, The Hershey Company, Whirlpool, Geico, Kaiser-Permanente, Bayer, Phillips Electronics and sitting U.S. Supreme Court Justice Samuel Alito.

7.      VGI maintains an office at 100 Vanguard Boulevard, Malvern, Pennsylvania 19355.

## IV.   FACTUAL BACKGROUND

8.      HBui was hired by VGI on or about 1999 and most recently worked as a Project Administrator – Level E.

9.      HBui had a clean disciplinary record, received positive annual reviews and up until 2012, he received fair yearly performance bonuses from VGI.

10.     On or about June 2011, HBui received a promotion to the position Project Administrator – Level E.

11.     On or about October 2011, HBui began reporting to a new manager, Andrew Labant ("Mr. Labant") who is a Caucasian male.

12.     As a manager, Mr. Labant persistently failed to provide HBui with mentoring and coaching. Examples include failing to provide concrete feedback and ascertainable milestones

2

when asked, responding routinely "just show me", when it was clear to Mr. Labant that HBui persistently tried but was unable to meet Mr. Labant's expectations which were not being clearly communicated to him.

13. Further, Mr. Labant treated HBui's similarly situated female peers preferentially, specifically Carissa Anthony and Pamela Hernandez, regularly providing coaching and mentoring to such females and working with them to achieve their performance goals.

14. Mr. Labant would pay more attention in the work environment to HBui's similarly situated female peers than he would to HBui, which had the direct effect of furthering their careers, when compared with HBui's career in his new position.

15. Mr. Labant acted inappropriately and unprofessionally with HBui's female peers, including: taking their pictures with his phone on non-work related matters, asking them for hugs and having them over to his house for non-work events. Mr. Labant never exhibited such behavior towards HBui.

16. Mr. Labant used inappropriate language at professional meetings, including words such as "boobs", showing a complete disregard for the work environment generally, and a preference towards women specifically.

17. Mr. Labant did not speak to HBui casually during the work day, as he did to his similarly situated female peers.

18. Mr. Labant spoke to HBui in a different tone, often angrily, as compared to how he spoke to HBui's similarly situated female peers, in a friendlier, inquisitive manner.

19. Mr. Labant acted frustrated and very negative around HBui at all times.

20. On or about August 2012, HBui reported Mr. Labant's conduct to Vanguard's Human Resources Department ("HR").

21.     Following HBui's report to HR, HBui went on vacation.  HR told him they would address his report while he was on vacation.

22.     HR assured HBui that his report was confidential and his name would not be given to Mr. Labant.

23.     However, when HBui returned from vacation, Mr. Labant began treating HBui worse, exhibiting even more of the gender-preferred behavior above and more frequently.

24.     Upon inquiry, HR informed HBui that they had to give Mr. Labant his name because there had been other reports made about Mr. Labant which were not handled properly.

25.     In 2011, HBui's first year in the Project Manager – Level E position, he received a $5,000.00 performance bonus for the superior job performance HBui exhibited.

26.     In 2012, for HBui's second year in the Project Manager – Level E position, (HBui's first year working under Mr. Labant, and following his complaints to HR) his performance bonus was reduced to $1,100.00.

27.     Mr. Labant had provided his input as to what amount of bonus HBui should receive.

28.     Before HBui received his greatly-reduced performance bonus in 2012, Mr. Labant told him he did not want to give him a bonus at all, but HR told him he had to give him a bonus because it was performance based.

29.     On or about February-March 2013, HBui attended the annual VGI meeting to go over targets for 2013.

30.     In April 2013, Mr. Labant gave HBui a 60-day verbal written warning for poor performance, despite the fact that they were only one month into the financial year, having given HBui less than one (1) month to "just show me" as Mr. Labant continued to communicate to HBui, although HBui's performance was objectively meeting VGI's expectations.

31. When HBui's 60-day verbal written warning ended, Mr. Labant expanded his warning into an additional 30-day formal warning based on HBui's performance during the verbal written warning period.

32. Despite HBui's repeated requests to Mr. Labant to provide him with concrete targets to hit, Mr. Labant did not provide him with anything concrete or in writing to help him improve his performance, again stating that HBui would just have to show him.

33. Despite Mr. Labant ignoring HBui's attempts to improve, HBui created his own action plan and sought mentoring from multiple managers, including Mr. Labant, as HBui was determined to improve in Mr. Labant's eyes, for his own professional growth and for the sake of VGI.

34. On September 11, 2013, HBui again voiced his concerns to HR about Mr. Labant's continued negative treatment towards HBui.

35. HBui asked the HR representative what will happen when his 30-day formal warning was up, and he was told to update his resume and start looking for a job elsewhere.

36. In late September 2013, HBui again voiced his concerns to HR, this time about the retaliatory performance warnings, about his inappropriate comments at meetings, and about how his preferential treatment of his female counterparts made him uncomfortable in the workplace.

37. An HR representative told HBui that the written warning was "well written", i.e., it was planned out well, when HBui set up a meeting with HR in April to question his 60-day verbal written warning.

38. HR set up a meeting for October 16, 2013.

39. When HBui arrived for the meeting on October 16, 2013, he was surprised to see Mr. Labant and his manager, Ms. Diane Reger in the room.

5

40. VGI terminated HBui's employment during this meeting on October 16, 2013, after 15 years of service to VGI.

41. VGI discriminated against HBui by permitting Mr. Labant, after multiple documented complaints, to treat HBui's similarly situated female co-workers preferentially which had the effect of alienating and hamstringing HBui's growth within VGI.

42. VGI retaliated against HBui by permitting Mr. Labant to continue to treat HBui poorly, issue verbal and written warnings to him and finally to terminate HBui's employment, for complaining about Mr. Labant's conduct in the workplace.

43. VGI's actions in this regard constitute unlawful gender discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.* as amended, and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963.

V. **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

44. On November 11, 2013, Plaintiff dual-filed a charge for the claims asserted herein with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC").

45. On May 7, 2014, the PHRC dismissed Plaintiff's charge. (PHRC Case No. 201303663).

46. In response to HBui's attorney Jared A. Jacobson, Esq.'s request, the EEOC issued a Notice of Right to Sue Letter on July 9, 2014.

VI. **CLAIMS**

**COUNT I – HBui v. VGI**
**GENDER DISCRIMINATION**

47. Paragraphs 1 through 46 are incorporated by reference as if fully set forth.

48. The acts, failures to act and conduct of VGI set forth above constitute unlawful gender discrimination in violation of HBui's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, as amended and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963.

49. WHEREFORE, Plaintiff, HBui, respectfully demands judgment in his favor and against Defendant, VGI, and seeks all appropriate remedies under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, as amended and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 including compensatory and punitive damages, declaratory and injunctive relief, interest, costs (including expert witness fees), liquidated damages, negative tax consequence damages, attorney's fees and such other relief as the Court shall deem appropriate.

### COUNT II – HBui v. VGI
### RETALIATION

50. Paragraphs 1 through 49 are incorporated by reference as if fully set forth herein.

51. The acts, failures to act and conduct of VGI set forth above constitute retaliation against HBui for exercising his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, as amended and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963.

WHEREFORE, Plaintiff, HBui, respectfully demands judgment in his favor and against Defendant, VGI, and seeks all appropriate remedies under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, as amended and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 including compensatory and punitive damages, declaratory and injunctive relief, interest, costs (including expert witness fees), liquidated damages, negative tax consequence damages, attorney's fees and such other relief as the Court shall deem appropriate.

                                      Respectfully submitted,

Date: <u>August 14, 2014</u>          By: <u>JAJ2397</u>
                                              Jared A. Jacobson - Pa. Atty. Id. No. 201382
                                              **JARED JACOBSON LAW, LLC**
                                              450 N. Narberth Avenue, Suite 102
                                              Narberth, PA  19072
                                              215-575-0890 (phone)
                                              609-543-2600 (fax)
                                              jjacobson@jaredjacobsonlaw.com

                                              *Attorney for Plaintiff,*
                                               *Hieu Bui*

## VERIFICATION

I, Hieu Bui, hereby state that the facts above set forth are true and correct, or are true and correct to the best of my knowledge, information and belief and that I expect to be able to prove the same. I understand that the statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Date: 7-30-2014

*Hieu Bui*
Hieu Bui